**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION**

| | |
|---|---|
| YOLANDA L. BARNHILL individually, and on behalf of all others similarly situated, | )<br>)<br>)<br>) |
| Plaintiff, | ) Case No: 2:25-cv-155 |
| v. | )<br>) |
| CDITH, LLC d/b/a Terre Haute Casino Resort | )<br>)<br>) |
| Defendant | ) |

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Yolanda L. Barnhill ("Plaintiff"), individually, and on behalf of all others similarly situated, brings this Rule 23 Class and Collective Action Complaint against CDITH, LLC d/b/a Terre Haute Casino Resort ("Defendant"), and hereby states and alleges as follows:

**INTRODUCTION**

1. Plaintiff and all other similarly situated employees work or worked as dealers for Defendant, a casino located in Terre Haute, Indiana.

2. Pursuant to its casino-wide policies and procedures, Defendant failed to pay Plaintiff, and other similarly situated employees, the mandated federal minimum wage rate of $7.25 per hour for all hours worked and overtime for all hours worked over 40 in a single workweek. Specifically, Defendant failed to properly inform its tipped employees of the required tip credit provisions prior to paying a sub-minimum direct cash wage and, as a result, Defendant may not claim a tip credit. Moreover, Defendant expressly told Plaintiff and other dealers in writing that Defendant was <u>not</u> taking a tip credit.

3. Defendant's systemic violation of federal and state wage laws was willful.

4. Plaintiff, individually and on behalf of all others similarly situated, brings this lawsuit as: (a) a collective action under the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. § 201, et seq., to recover unpaid minimum and overtime wages owed to Plaintiff and all other similarly situated workers employed by Defendant; and (b) a Rule 23 class action under Indiana state law, including the Indiana Wage Payment Statute, I.C. 22-2-5, to recover unpaid and underpaid wages owed to Plaintiff and all other similarly situated workers employed by Defendant.

## JURISDICTION AND VENUE

5. Federal question jurisdiction over the FLSA claims of Plaintiff and all others similarly situated is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

6. Supplemental jurisdiction over the state law claims of Plaintiff and all others similarly situated is based on 28 U.S.C. § 1367, in that the state law claims are so related to the FLSA claims that they form part of the same case or controversy.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district.

## PARTIES

8. Plaintiff is a resident of Terre Haute, Indiana (Vigo County). From approximately March 20, 2024 through the present, Plaintiff has been employed by Defendant at its casino property located in Terre Haute, Indiana. During her employment, Plaintiff has worked as a Table Games Dealer, which is a tipped, hourly, non-exempt position. Plaintiff's Consent to Be a Party Plaintiff pursuant to 29 U.S.C. § 216(b) is attached hereto as Exhibit A.

9. Defendant is a limited liability company organized under the laws of the State of

Delaware. Defendant is registered to do business and does conduct business in the State of Indiana. Specifically, Defendant operates a casino property located in Terre Haute, Indiana.

10. At all relevant times, Defendant is or has been an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of 29 U.S.C. § 203(s)(1), and, upon information and belief, has had an annual gross volume of sales made or business done of not less than $500,000.

11. At all relevant times, Defendant was the employer of Plaintiff, and all other similarly situated employees.

12. At all times relevant to this action, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

13. Plaintiff and all similarly situated employees are non-exempt, hourly employees who work or worked for Defendant within the respective limitation periods.

## OVERVIEW OF PLAINTIFF'S CLAIMS

### Entitlement to the Tip Credit – Failure to Give Notice

14. An employer may, in certain circumstances, take a "tip credit" toward its minimum wage obligations for tipped employees. Pursuant to the explicit language of the FLSA, a tip credit may not be taken "with respect to any tipped employee unless such employee has been informed by the employer of the provisions of [29 U.S.C. § 203(m)], and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." 29 U.S.C. § 203(m)(2).

15. The Department of Labor's interpreting regulations concerning Section 3(m)

provide as follows:

> [A]n employer is not eligible to take the tip credit unless it has informed its tipped employees in advance of the employer's use of the tip credit of the provisions of section 3(m) of the Act, i.e.: [1] The amount of the cash wage that is to be paid to the tipped employee by the employer; [2] the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee; [3] that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and [4] that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

29 C.F.R. § 531.59(b).

16. Defendant employs Plaintiff and other similarly situated tipped employees by paying a sub-minimum direct cash wage but failed to properly notify them of the tip credit requirements of the FLSA. Moreover, Defendant has expressly told Plaintiff and others in the class that Defendant does _not_ take the tip credit. Specifically, Plaintiff Yolanda Barnhill has always been paid her hourly wage at a rate that is less than $7.25 per hour. During her first year of employment, Plaintiff Barnhill was paid at rates that ranged between approximately $5.25 per hour and $5.50 per hour. Currently, her hourly wage rate was just increased to $5.4075 per hour.

17. Specifically, Plaintiff and other similarly situated tipped employees are not informed, in advance of Defendant's use of the tip credit, of: (1) the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by Defendant, which amount may not exceed the value of the tops actually received the employee; (2) that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and (3) that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

18. As Defendant has failed to properly inform Plaintiff and other similarly situated tipped employees of the required tip credit provisions, Defendant has willfully violated federal law by failing and refusing to pay all minimum wages due and owing. Moreover, Defendant's violations of the Indiana Wage Payment Statute were committed in bad faith, and certainly were not committed in good faith.

### Unlawful Rounding of Time Clock Punch Facts

19. Important to this case, all of Plaintiff's and her similarly situated coworkers' compensable work time was recorded on Defendant's time clocks. This time recorded on Defendant's time clocks included time spent in mandatory pre-shift dealer meetings that occurred before Plaintiff was officially scheduled to begin her shift. The time clock punches included the very first principal activity Plaintiffs engage in after swiping their badge in Defendant's time clock. In the same way, Plaintiff's and all similarly situated coworkers' last principal activity each day occurred just prior to punching out for the work day on Defendant's time clock. All of this required work was recorded on Defendant's time clock, however, Defendant rounded off that time and did not pay wages for all of that work time.

20. Plaintiff and her similarly situated coworkers are and were common victims of Defendant's compensation scheme whereby it illegally and impermissibly rounded time clock punches in its favor only and in a manner that failed to pay Plaintiff and all similarly situated coworkers for significant compensable work hours.

21. Defendant has created a compensation scheme through a series of computer software commands (time punch rounding commands) programmed into Defendant's time clock software and payroll software, coupled with multiple company disciplinary rules regarding tardiness that ensure that Defendant will always benefit from its time punch rounding scheme

and guarantee that Defendant will take an impermissible and unfair financial advantage over its employees by rounding in a non-neutral fashion that results in enormous sums of unpaid hourly wages owed to Defendant's hourly paid employees on a cumulative basis.

22. At all times relevant, for Plaintiff and her hourly-paid coworkers, Defendant used and uses an electronic time keeping system. Employees clock in by punching in employee identification numbers in a computerized time clock. Using this time clock, for each shift, the employee would record his/her actual time he/she began work for each shift and record the actual time the employee ended his/her work shift. If Defendant paid its non-exempt, hourly-paid employees wages and overtime based upon its machine(s)' actual time punches, Defendant would likely have paid wages in compliance with the FLSA and IWPS.

23. Defendant does not pay its employees' hourly-paid wages based upon actual employee time worked and based upon Defendant's own time punch records.

24. Importantly, Defendant does not record its non-exempt, hourly-paid employees' work time in any other way. The only time records Defendant has to base its payment of wages are the time records generated by its electronic time clocks.

25. Defendant has created a policy and practice whereby it significantly adjusts downward and shaves time from its non-exempt, hourly-paid employees' time records and pays its employees wages for less than their full time worked and full time reported on Defendant's own time clocks.

26. Based upon its long-standing policy and practice of manipulating and downwardly adjusting time from its non-exempt, hourly-paid employee time records, Defendant has been systematically underpaying its employees significant sums of wages and overtime compensation on a daily basis. The aggregate sum of unpaid wages for all of Defendant's

Indiana employees based upon Defendant's non-neutral and self-serving rounding scheme is very substantial on a daily, weekly and annual basis.

27.     Defendant's rounding can be determined from the face of Defendant's employees' time punch records and corresponding pay stubs. Defendant rounds all time punches in its favor and to employees' detriment. From each employee's time punches, Defendant reduces the net cumulative time downward in Defendant's favor only by many minutes (generally, up to 14 minutes, with up to 7 minutes shaved from initial time punches and up to 7 minutes shaved from exit time punches) for each work shift. All rounding functions are programmed into Defendant's time clock and corresponding pay roll software and all rounding functions favor Defendant and harm employees.

28.     Further, Defendant is rounding employee time punches for Defendant's own financial benefit and for the sake of rounding alone. Defendant is not and has not made any determination or created any record for any shift for any employee that the employee was on the clock but not actively working. Moreover, as explained above, Plaintiffs were working from their time punch in continuously until their time punch out. As a specific example, at least one day per week, Plaintiff and coworkers on her shift were required to clock in and attend a pre shift meeting conducted by managers. The pre shift meeting was mandatory and it occurred prior to any scheduled shift start time. Defendant would still round employees' time clock punches in Defendant's own favor to the official scheduled shift time, even though the shaved/rounded time on these days was spent in a mandatory work meeting. Defendant has no records to show that its self-serving rounding occurred based upon any observation or determination by Defendant that an employee subjected to rounding was not working while on the clock during any shift. Defendant's records are the best and only records that show employees were working at all times

punched in on Defendant's time clock. Employees were working when punched in on Defendant's time clock.

29.     Plaintiff will need to obtain Defendant's time clock data and pay roll records in discovery to provide specific dates and specific amounts of work time that Defendant rounded and did not pay, but Plaintiff and every similarly situated class member was subjected to time clock rounding every work shift and every work week, resulting in unpaid wages and unpaid overtime every work week.

30.     It did not occur regularly, but Plaintiff did work some overtime hours for Defendant. Plaintiff expressly alleges and asserts that they she was not paid for all time recorded on Defendant's time clock and all time worked in every work week. This is particularly true based upon the combination of Defendant's computer programmed and non-neutral time clock punch rounding plus the fact that the rounded time included work time Plaintiff and coworkers spent in Defendant's mandatory pre shift meetings.

31.     Defendant's computer-programmed time rounding scheme, coupled with its disciplinary rules, harmed Plaintiff and her similarly situated coworkers in the same way on a company-wide basis every work week. This rounding scheme has been harming Defendant's employees since the casino opened in early 2024. Based upon information and belief, this time rounding scheme has been harming employees for more than one (1) year now and certainly within the three (3) years prior to the date this complaint has been filed. Plaintiff's unpaid wages for regular and overtime hours and her damages under the FLSA and IWPS are representative of those owed to all of Defendant's Terre Haute-based dealers subjected to the same time clock and pay roll software and same time punch rounding scheme.

32.     Pursuant to its systematic, class-wide practices, Defendant is not compensating its

hourly-paid casino dealers for all time worked and recorded on a continuous work day basis.

33. All of Defendant's time rounding practices were intentionally computer programmed and performed to Defendant's advantage and the detriment and harm of Plaintiff and her hourly-paid coworkers. Defendant's time punch rounding practices are not neutral, as required by the FLSA and corresponding Indiana law.

34. Defendant intentionally and knowingly violated its employees' rights to earned wages and earned overtime compensation through Defendant's illegal and non-neutral time rounding schemes and Defendant's conscious decision to shave recorded work time and pay employees less in wages and overtime than the employees earned while performing work for Defendant.

35. By way of this Complaint, Plaintiff seeks for herself and all other similarly situated hourly-paid casino dealers, all wages, all overtime compensation, liquidated damages, statutory damages, statutory penalties and all damages owed. Additionally, Plaintiff seeks payment of their attorney's fees, costs and expenses. Defendant knowingly and willfully engaged in the above-mentioned violations of the FLSA and IWPS.

## COLLECTIVE AND CLASS ACTION ALLEGATIONS

36. Plaintiff re-alleges the allegations set forth above.

37. Plaintiff brings Count I, the FLSA claim arising out of Defendant's tip credit notification policy and its non-neutral time clock punch rounding scheme, as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself and the following collective action class:

### FLSA Collective

All persons employed by Defendant as casino dealers during the relevant period and paid a direct cash wage of less than $7.25 per hour.

38. At present, the relevant period includes the three-year period prior to the filing of the Class and Collective Action Complaint and extends forward to the present. The collective defined herein remains subject to change or modification based on, among other things, certification-related discovery, agreement of the parties, and/or Order of the Court.

39. Plaintiff's FLSA claim (Count I) may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b).

40. Plaintiff, individually and on behalf of all others similarly situated, seeks relief on a collective basis challenging Defendant's above-described FLSA violations. The number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be determined from Defendant's records, and potential opt-in plaintiffs may easily and quickly be notified of the pendency of this action.

41. Plaintiff brings Count II, the Indiana Wage Payment Statute claim arising out of Defendant's unlawful tip credit notification policy and non-neutral time clock punch rounding scheme, as a class action under Fed. R. Civ. P. 23, on behalf of herself and the following class:

### IWPS Class

> All persons employed by Defendant during the relevant period and paid a direct cash wage of less than $7.25 per hour.

42. At present, the relevant period includes the two-year period prior to the filing of the Class and Collective Action Complaint and extends forward to the present. The class defined herein remains subject to change or modification based on, among other things, certification-related discovery, agreement of the parties, and/or Order of the Court.

43. Plaintiff's Indiana state law claim (Count II) described in detail below, satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

44. The class number will be more than one hundred individuals. As a result, joinder of all class members in a single action is impracticable. Class members may be informed of the pendency of this action through regular mail, e-mail, and/or posting of an approved notice.

45. There are common questions of fact and law to the classes that predominate over any questions affecting only individual class members. The questions of law and fact common to the classes arising from Defendant's actions include, without limitation, the following:

    a. Whether Defendant violated the IWPS by paying Plaintiff and class members less than all "wages earned" when it paid them less than $7.25 per hour for regular hours worked;

    b. Whether Defendant gave Plaintiff and class members advance notice of its use of a tip credit, and whether, as a result, said tip credit was legally valid;

    c. Whether Defendant acted in good faith;

    d. Whether Defendant violated the IWPS by systematically paying Plaintiff and all class members less than all wages due pursuant to a non-neutral time clock punch rounding scheme through software programmed rounding commands.

46. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency,

economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

47. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

48. A class action is the superior method for the fair and efficient adjudication of Plaintiff's claims. Defendant has acted or refused to act on grounds generally applicable to the classes. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of class members to protect their interests.

49. Plaintiff is an adequate representative because she is a member of each of the classes she seeks to represent, and her interests do not conflict with the interests of the members of those classes. The interests of the members of the classes will be fairly and adequately protected by Plaintiff and her undersigned counsel, who are experienced prosecuting complex wage and hour, employment, and class action litigation.

50. Maintenance of this action as a class action is a fair and efficient method for adjudication of this controversy. It would be impracticable and undesirable for each member of the classes who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in consistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

**ALLEGATIONS APPLICABLE TO THE FLSA CLAIM (COUNT 1)**

51. At all times material herein, Plaintiff and all others similarly situated have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

52. The FLSA regulates, among other things, the payment of minimum wage and overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 206(a); 29 U.S.C. § 207(a)(1).

53. Defendant is subject to the minimum wage and overtime pay requirements of the FLSA because it is an enterprise engaged in interstate commerce and its employees are engaged in commerce.

54. During all relevant times to this action, Defendant was the "employer" of Plaintiff and all similarly situated employees within the meaning of the FLSA. 29 U.S.C. § 203(d).

55. During all times relevant to this action, Plaintiff and all similarly situated employees were Defendant's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

56. Plaintiff and all similarly situated employees are covered, non-exempt employees within the meaning of the FLSA. Accordingly, Plaintiff and all similarly situated employees must be paid minimum wage in accordance with 29 U.S.C. § 206.

57. Pursuant to the FLSA, employees are also entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek. 29 U.S.C. § 207(a).

58. Although the FLSA contains some exceptions (or exemptions) from the minimum wage and overtime requirements, none of those exceptions (or exemptions) applies here.

59. Plaintiff and all similarly situated employees are victims of uniform compensation policies and uniformly applied compensation practices.

60. Plaintiff and all similarly situated employees are entitled to damages equal to the mandated minimum wage and overtime premium pay within the three (3) years preceding the filing of the Class and Collective Action Complaint, plus periods of equitable tolling, because Defendant acted willfully and knew, or showed reckless disregard of whether its conduct was prohibited by the FLSA.

61. Defendant has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result, Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b). Alternatively, should the Court find Defendant acted in good faith or with reasonable grounds in failing to pay minimum wage and overtime compensation, Plaintiff and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

62. As a result of these violations of the FLSA's minimum wage and overtime pay provisions, compensation has been unlawfully withheld by Defendant from Plaintiff and all similarly situated employees. Accordingly, pursuant to 29 U.S.C. § 216(b), Defendant is liable for the unpaid minimum wages and overtime premium pay along with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

**ALLEGATIONS APPLICABLE TO THE INDIANA WAGE PAYMENT STATUTE (COUNT II)**

63. At all times relevant, Plaintiff and the class members have been entitled to the rights, protections, and benefits provided under the Indiana Wage Payment Statute. I.C. 22-2-5.

64. During all times relevant to this action, Defendant was the "employer" of Plaintiff and the class members within the meaning of the Indiana Wage Payment Statute, or otherwise subject to its statutory provisions.

65. During all times relevant to this action, Plaintiff and the class members were Defendant's "employees" within the meaning of the Indiana Wage Payment Statute.

66. Plaintiff was not paid her full hourly wage of at least $7.25 per hour for any and every hour she performed work for Defendant. The same is true for every similarly situated class member (other casino dealers).

67. Plaintiff and other similarly situated employees were not paid for work time recorded on Defendant's time clock. Plaintiff and class members were not paid for this recorded work time as a result of Defendant's computer programmed and non-neutral time clock rounding schemes.

68. Plaintiff has a statutory wage claim arising under the Indiana Wage Payment Statute, I.C. 22-2-5 and she is the Plaintiff who represents the same or similar interests of all current and former (who voluntarily ended their employment) casino dealers working for Defendant.

69. By way of this Claim, Plaintiff is seeking, individually and on behalf of members of the Plaintiff Class of current and former casino dealer employees of Defendant, all available damages, including all unpaid wages, all underpaid wages, all available liquidated (treble damages), all attorney's fees, costs and expenses, plus any other damage to which Plaintiff and her fellow Plaintiff Class members may be entitled pursuant to law. Pursuant to I.C. 22-2-5-2,

Plaintiff is seeking, individually and on behalf of members of the Plaintiff Class, payment of unpaid wages, underpaid wages, plus all available damages, including, but not limited to, double the amount of wages due as additional monetary damage, plus all attorney's fees, costs and expenses.

70.     Plaintiff is expressly alleging that Defendant did not act in good faith when it failed to pay wages to Plaintiff and the Plaintiff Class. Plaintiff is expressly alleging that Defendant acted in bad faith when it failed to pay all recorded and earned wages to Plaintiff and the Plaintiff Class.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all persons similarly situated, pray that this Honorable Court:

A. Conditionally certify this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b) and direct that Court-approved notice be issued to similarly situated persons informing them of this action and enabling them to opt-in;

B. Certify this case as a class action under Fed. R. Civ. P. 23 as to the Indiana Wage Payment Statute Class;

C. Enter judgment against Defendant and in favor of Plaintiff, the Opt-Ins who join this case pursuant to the FLSA and the Indiana Class pursuant to the IWPS;

D. Award Plaintiff and the putative class actual damages for unpaid wages;

E. Award liquidated damages to the maximum amount permitted by applicable law (100% under the FLSA and 200% under the IWPS);

F. Award Plaintiff and the Indiana Class all liquidated damages, statutory damages, attorney's fees, costs and expenses for IWPS violations;

G. Award Plaintiff and the putative class attorneys' fees, costs, and disbursements; and,

H. Award Plaintiff and the putative class further and additional relief as this Court deems just and proper.

Respectfully submitted,


<u>s/ Robert P. Kondras, Jr.</u>
Robert P. Kondras, Jr. (18038-84)
HASSLER KONDRAS MILLER LLP
100 Cherry St.
Terre Haute, IN 47807
Telephone: (812) 232-9691
Facsimile: (812) 234-2881
kondras@hkmlawfirm.com